IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZOOBUH, INC., a Utah Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TOM WILLIAMS (d/b/a EMARKETCOUPONS.COM), an individual; LEAD SERVICE GROUP, INC., a California company; WILLIAM "BILL" WAGGONER, an individual; ZEUS MEDIA, a California company; DOE-1, BELL HOLDINGS, LLC (f/k/a TECHNOLOGY ADVICE, LLC) (d/b/a THRIVE MARKETING GROUP, LLC), a Tennessee limited liability company; DOES 2-40,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT BELL HOLDINGS, LLC D/B/A THRIVE MARKETING GROUP'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION<br><br><br>Case No. 2:13-CV-791 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Bell Holdings, LLC d/b/a Thrive Marketing Group's ("Thrive") Motion to Dismiss for Lack of Personal Jurisdiction. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

Plaintiff ZooBuh, Inc. ("ZooBuh") is a Utah corporation, with its principal place of business in Cedar Hills, Utah. Defendant Thrive is a Tennessee limited liability company with its principal place of business in Brentwood, Tennessee.

ZooBuh provides email, blog, and chat services for its customers. ZooBuh alleges that it is a bona fide Internet Access Service as defined by the CAN-SPAM Act.[1] ZooBuh owns all

---

[1] 15 U.S.C. §§ 7701–7713.

1

servers, routers, and switches on its network and every ZooBuh email account is registered, hosted, and serviced through ZooBuh's hardware.

Thrive is a digital marketing company, which contracts with third-party publishers to provide multi-media marketing and advertising services for clients.  As part of its business, Thrive sells and rents email lists for the purpose of email marketing.  Thrive sells these email lists based on various recipient categories, such as age, occupation, or geographic location.

ZooBuh alleges that Thrive, either directly or through its third-party publishers, sent 30,611 emails to ZooBuh customers through the use of ZooBuh's Utah-based email network servers in violation of the CAN-SPAM Act.   These emails advertised and provided links to the website executivewhoswhoform.com.

ZooBuh identified Name.com as the register for the domain executivewhoswhoform.com during the time in question.  ZooBuh issued a subpoena to Name.com requesting information to identify the registrant of the domain executivewhoswhoform.com.  Name.com identified Defendant Thrive as the registrant of executivewhoswhoform.com during the relevant time period.  ZooBuh alleges that Thrive is the sender of the 30,611 emails at issue in this case.

ZooBuh alleges that such SPAM has caused and continues to cause, a number of harms to ZooBuh's business, including financial harm, lost time, diminished life span of ZooBuh's technology hardware, server crashes, and more.  Specifically, ZooBuh states, "[d]uring the time frame of the emails in question, ZooBuh . . . experienced significant harm in the form of server spikes, server crashes, bandwidth spikes, memory exhaustion, and unrecoverable hardware failure, all of which are attributable to [ZooBuh's] receipt of SPAM email."[2]  Furthermore,

---

[2] Docket No. 107, at 9.

ZooBuh alleges that it regularly receives complaints from its customers about the frequent spamming.

In support of its Motion, Thrive has provided an affidavit from its CEO, Robert Bellenfant ("Bellenfant") stating that Thrive has no involvement with or control over the emails delivered on behalf of its clients. Instead, as is a common business practice, Thrive provides advertising content to third-party publishers who maintain full control over distribution. Bellenfant claims that Thrive does not approve or control any part of the email delivery process. Furthermore, Thrive claims that none of its business activities occur in Utah; it has never been registered to do business in Utah; it has never held any offices, property, assets, telephone listings, or bank accounts in Utah; it does not have any employees, members, or managers in Utah; it does not work with client advertisers who reside in or do business in Utah; it does not have regular sales personnel in Utah; and it receives less than 1% of its sales revenue from Utah customers.

## II. PERSONAL JURISDICTION STANDARD

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings . . . and affidavits, that burden can be met by a prima facie showing."[3] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting

---

[3] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (citing *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008)).

affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient."[4]

This matter is before the Court based upon federal question jurisdiction. "Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'"[5]

The parties do not argue that CAN-SPAM authorizes nationwide service of process. Therefore, the Court will proceed under the assumption that it does not. Where the federal statue does not authorize service of process, Federal Rule of Civil Procedure 4(k)(1)(a) "commands the district court . . . to apply the law of the state in which the district court sits."[6] Utah's long arm statute provides that it "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[7] The Utah Supreme Court has stated that "any set of circumstances that satisfied due process will also satisfy the long-arm statute."[8] "This collapses the Utah standard into the more general 'due process' standard for jurisdiction."[9]

---

[4] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990) (quoting *Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984)).

[5] *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

[6] *Dudnikov*, 514 F.3d at 1070.

[7] Utah Code Ann. § 78B-3-201(3).

[8] *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).

[9] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

A due-process analysis of personal jurisdiction is a two-step inquiry.  First, this Court must consider whether the defendant has sufficient "minimum contacts" with the forum state "that he should reasonably anticipate being haled into court there."[10]  Second, "if the defendant's actions create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice."[11]

The minimum-contacts standard can be established through a finding of either general jurisdiction or specific jurisdiction.  For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[12]  These activities must be continuous and systematic to justify a finding of general jurisdiction.[13]

> In assessing contacts with a forum, courts have considered such factors as: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.[14]

"The minimum contacts necessary for specific personal jurisdiction may be established where the defendant has purposefully directed its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's

---

[10] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[11] *OMI Holdings, Inc. v. Royal Ins. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation and internal quotation marks omitted).

[12] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[13] *Helicopteros Nacionales de Colom. S.A. v. Hall*, 466 U.S. 408, 416 (1984).

[14] *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

contacts with the forum."[15]  "If the court finds the evidence shows the 'purposeful direction' and 'arising out of' requirements have been met, the court must then inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice."[16]  In making this determination, courts look to the following factors: "(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies."[17]

### III.  DISCUSSION

Plaintiff argues that the Court has both general and specific jurisdiction over Defendant Thrive.  Each jurisdictional basis will be discussed below.

A.    GENERAL JURISDICTION

Plaintiff argues this Court can exercise general jurisdiction over Defendant Thrive because Defendant both engages in business in Utah and advertises or solicits business in this state.  Specifically, ZooBuh contends Thrive generates sales leads and creates email lists from the thousands of emails it, either directly or through publishers, regularly sends to Utah residents, such that Thrive has established systematic and continuous contacts with Utah.

---

[15] *Trujillo v. Williams*, 465 F.3d 1210, 1218 (10th Cir. 2006) (citations and internal quotation marks omitted).

[16] *Shrader*, 633 F.3d at 1239–40.

[17] *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 n.1 (10th Cir. 2004).

General jurisdiction exists only when "a party's contacts with a state are so numerous and significant that the party has a domicile in or a near domicile relation to the state."[18]  In asserting general jurisdiction, the plaintiff must show the nonresident defendant has continuous and systematic contacts within the forum state.[19]  The facts relied upon by the plaintiff to prove such contacts exist "must be extensive and persuasive."[20]  Furthermore, "[s]imply because a defendant has . . . business dealings with a person or entity in the forum state does not subject him to general jurisdiction there."[21]

Both the Tenth Circuit and this Court have held a defendant will not be subject to general jurisdiction merely because the defendant's advertisements are found in the forum state as a result of the defendant's nationwide advertising campaign.[22]  In *Haas v. A.M. King Industries, Inc.*, the Court denied the plaintiff's assertion of general jurisdiction where the defendants were neither located nor licensed to conduct business in Utah, and had merely placed national and regional advertisements, sent out mailings, and maintained a website for their company's commercial benefit.[23]  Furthermore, the defendant in that case derived less than 1% of its

---

[18] *Haas v. A.M. King Indus., Inc.*, 28 F. Supp. 2d 644, 648 (D. Utah 1998).

[19] *Tomlinson v. H&R Block, Inc.*, 151 F. App'x. 655, 657 (10th Cir. 2005).

[20] *Id.*

[21] *Shrader*, 633 F.3d at 1246–47.

[22] *See, e.g.*, *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001) ("[T]he mere placement of advertisements in nationally-distributed publications cannot be regarded as 'continuous and systematic' in nature.").

[23] 28 F. Supp. 2d at 650.

national sales from Utah customers.[24]  The Court held that such contacts were "minimal" and "insufficient to meet the 'continuous and systematic' requirement."[25]

Similarly, the fact that Thrive, either directly or through publishers, sends out nationwide emails, some of which were delivered to Utah residents, does not amount to "continuous and systematic" contacts within Utah.  Though ZooBuh asserts that Thrive's website states that Thrive has the ability to target geographic areas for email marketing purposes, ZooBuh has not presented any evidence to show that Thrive has ever targeted Utah residents in its marketing efforts.  Even more, ZooBuh has not asserted facts that suggest such targeting of Utah residents took place continuously and systematically.

ZooBuh further argues that because Thrive's product—email lists and sales leads—are generated largely through information gathered from these marketing emails, Thrive essentially "manufactures" its product in Utah, among many other states where contact information is collected.  In so doing, Plaintiff argues, Defendant has substantial and continuous contact with Utah.  While this presents an interesting argument, there is no evidence in the record to support it.  In fact, ZooBuh has not alleged a single instance where a Utah resident or business has provided contact information to Thrive.  If no Utah residents have contributed information to Thrive's email lists, Utah cannot be a "manufacturing" location.

In contrast, Defendant Thrive has provided evidence that it does not solicit or conduct business in Utah through a local office or agents, it does not send agents into the state on a regular basis, it does not hold itself out as doing business in Utah, and only derives

---

[24] *Id.*

[25] *Id.*

approximately 1% of its revenue from Utah customers. Based on the evidence presented, the Court finds that there are not sufficient facts to establish general jurisdiction over Defendant Thrive.

B.      SPECIFIC JURISDICTION

Plaintiff ZooBuh argues that this Court may assert specific jurisdiction over Thrive because Thrive knowingly sent repeated email transmissions through Utah-based email servers and to Utah residents. Defendant Thrive argues that specific jurisdiction is lacking because it has never transacted business or supplied services in Utah and did not send any of the allegedly actionable emails.

The Court may exercise personal jurisdiction over a defendant when that defendant has purposefully directed its activities to the forum state. Purposeful direction has the following three elements: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state."[26]

To support its claim for specific jurisdiction, Plaintiff argues that

> Thrive, either directly or through its agents, knowingly sends thousands, if not millions, of emails over the Internet in an effort to generate sales leads and create email lists that it later sells. In this case, the transmission of emails into Utah was 'repeated' as Thrive sent at least 30,611 emails, each email constituting a different Internet transaction, to ZooBuh's mail servers in Utah.[27]

Defendant, however, argues that it has not purposefully directed any activity at Utah related to this action. Defendant states that it "has not sent any of the allegedly actionable emails to anyone in Utah . . . because the third-party publishers, as opposed to Thrive Marketing, send

---

[26] *Newsome v. Gallacher*, 722 F.3d 1257, 1264–65 (10th Cir. 2013) (quotation omitted).

[27] Docket No. 116, at 11.

the emails."[28] Defendant asserts that it "did not have knowledge as to where the actual senders of the emails—the publishers—were sending the subject emails or the location of the servers through which the emails would be delivered."[29]

To resolve this issue, it is helpful to consider the actual evidence the parties have presented. As stated, Defendant has presented the Declaration of Robert Bellenfant, Thrive's CEO. Mr. Bellenfant states that Thrive "engages third-party publishers to provide marketing and advertising services for Thrive Marketing's clients."[30] "In these marketing campaigns, third-party publishers transmit all commercial emails. Thrive Marketing does not initiate or procure the transmission of, or send, the emails."[31] Importantly, Mr. Bellenfant declares that

> Thrive Marketing also has no involvement with, or control over, the origination, approval, or delivery of the emails. It does not draft the content of the emails sent by the publishers; review or approve them; know where (i.e., the location or the recipient) the publishers send the emails; or decide the customers to whom the publishers should publish the emails.[32]

Plaintiff does not appear to dispute that Defendant Thrive used publishers to send the emails at issue. Plaintiff's CEO, F. Alan Fullmer, "reviewed many of the emails and found that Thrive used publishers to send many, if not all, of them."[33] Both parties recognize that the use of publishers is a common industry practice.[34]

---

[28] Docket No. 110, at 11.

[29] *Id.* at 12.

[30] *Id.* Ex. 2 ¶ 5.

[31] *Id.* ¶ 7.

[32] *Id.* ¶ 8.

[33] Docket No. 116 Ex. B ¶ 28.

[34] Docket No. 110 Ex. 2 ¶ 6; Docket No. 116 Ex. B ¶ 28.

Based upon the evidence presented, the Court cannot find that Defendant Thrive directly took any actions that are the subject of this litigation. Instead, Defendant used third parties who sent the emails of which Plaintiff complains. Plaintiff seeks to impute the actions of these third-party publishers, arguing that they are Defendant's agents or representatives. However, there is no evidence upon which the Court could find an agency relationship. Defendant Thrive has stated that it has no involvement with or control over the origination, approval, or delivery of the emails. "It does not draft the content of the emails sent by the publishers; review or approve them; know where (i.e., the location or the recipient) the publishers send the emails; or decide the customers to whom the publishers should publish the emails."[35]

Based upon this evidence, there is nothing that would permit the Court to impute the contacts of these third-party publishers to Defendant Thrive. While it is likely that the Court would be able to exercise jurisdiction over the publishers based on the emails they sent into Utah, Plaintiff has provided no basis to allow the Court to exercise jurisdiction over Defendant Thrive. As the Supreme Court has recently emphasized, a defendant's "relationship [with the forum state] must arise out of contacts that the 'defendant *himself*' creates with the forum State."[36] The Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."[37] At best, Plaintiff has shown contacts with the third-party publishers and Utah, but has not provided evidence of any minimum contacts between Defendant and the forum

---

[35] Docket No. 110 Ex. 2 ¶ 8.

[36] *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[37] *Id.*

state.  Therefore, the Court lacks jurisdiction over Defendant Thrive.  Because of this, the Court need not determine whether the exercise of jurisdiction would comport with the traditional notions of fair play and substantial justice.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 110) is GRANTED.

DATED this 18th day of December, 2014.

BY THE COURT:

Ted Stewart
United States District Judge